**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANNETTE WESLEY,

Case No:

Plaintiff,

Hon.

v.

FARMINGTON HILLS POLICE DEPARTMENT,

Defendant.

---

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff, Annette Wesley (hereinafter "Plaintiff"), by and through her attorneys Scott P. Batey and the Batey Law Firm, PLLC, and for her Complaint against Defendant states as follows:

1. Plaintiff, Annette Wesley, is a resident of the City of Brighton, County of Livingston and State of Michigan.

2. Defendant, Farmington Hills Police Department, Inc. ("Defendant") is a governmental entity authorized to operate in the southeastern district of Michigan

and whose registered office address is 31655 W. Eleven Mile Road, Farmington Hills, Michigan 48336.

3. The events giving rise to this cause of action occurred in the Eastern District of Michigan.

4. Venue is proper in the District Court for the Eastern District of Michigan pursuant to 28 USC §1391(b) and (c).

5. This Honorable Court has jurisdiction under 28 USC § 1331 and pendant jurisdiction over Plaintiff's state law claims under 28 USC § 1367 and is otherwise within the Jurisdiction of this Court.

6. Plaintiff brings this action for damages arising out of the acts and/or omissions of Defendant constituting unlawful discrimination/harassment in violation of Title VII of the Civil Rights Act of 1964, the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*. (ELCRA), and disability discrimination and in violation of the American Disabilities Act of 1990 (ADA), and the Michigan Persons with Disabilities Civil Rights Act, MCLA §37.1101, *et seq*. (PWDCRA), which resulted in emotional and economic damages to Plaintiff.

**GENERAL ALLEGATIONS**

7. Plaintiff incorporates by reference paragraphs 1 through 6 of the Complaint as though fully set forth herein.

8. In or around October 2003, Plaintiff began her employment with

Defendant as a 911 Emergency Dispatcher.

9. Since 2014, Plaintiff has suffered from degenerative disk disease which substantially impairs major life activities, including but not limited to, walking, standing, sitting, and lifting, and otherwise qualifies as a disability under the ADA.

10. On or about February 17, 2021, Plaintiff received a note from her doctor requesting her employer provide her with an ergonomic chair as a reasonable accommodation for her disability.

11. Defendant never provided this chair, never made any other sort of accommodation for her disability of degenerative disc disease and never asked for Plaintiff's doctor to fill out additional paperwork or justify the accommodation.

12. Defendant did not resolve Plaintiff's reasonable accommodation for an ergonomic chair.

13. On or about April 3, 2021, after working a 16-hour shift, Plaintiff suffered a head injury which substantially impairs major life activities, including but not limited to, concentrating, thinking, communicating, and working, and otherwise qualifies as a disability under the ADA.

14. On or about April 12, 2021, Plaintiff's doctor restricted her to working no more than eight hours at one time in a 24-hour period and provided this note to Defendant.

15. On or about April 13, 2021, Plaintiff requested the reasonable accommodation of working no more than eight hours in a 24-hour period.

16. On or about April 16, 2021, Defendant denied this reasonable accommodation.

17. On or about April 21, Plaintiff was forced to work a 12-hour shift against her doctor's recommendation.

18. Defendant did not suggest other reasonable accommodations for Plaintiff and did not engage in the interactive process with Plaintiff to find a reasonable accommodation for her.

19. In or around April 25, 2021, Defendant approved the reasonable accommodation request.

20. From May 2021 to August 2021, Defendant regularly called Plaintiff back into work for a second shift on the same day as when Plaintiff had worked her first shift.

21. From May 2021 to August 2021, Defendant regularly called Plaintiff in to work at 3:00 a.m., after she had already worked a 7:00 a.m. to 3:00 p.m. shift.

22. From May 2021 to August 2021, Plaintiff was regularly scheduled to work 12-hour shifts.

23. Defendant forced Plaintiff to use FMLA hours to fill the hours she could not work.

24. Defendant had not forced employees to use FMLA hours in the past to fill hours they could not work due to accommodations.

25. Andrew Isola (hereinafter "Isola"), a 911 Emergency Dispatcher for Defendant who was similarly situated to Plaintiff, was not forced to use his FMLA time when he did not work the overtime hours.

26. Isola had the same job as Plaintiff and is subject to the same union contract as Plaintiff.

27. Defendant discriminated against Plaintiff by forcing her to use FMLA time when it did not force a similarly situated male co-worker, Andrew Isola, to use the FMLA time.

28. After Plaintiff's repeated complaints that she was being treated differently than similarly situated males, Defendant eventually required Isola to use FMLA time for his absences.

29. Defendant never required Isola to use FMLA hours for the hours that he had not worked in the past and has provided extra accommodations for him to allow him to reach his retirement date.

30. Defendant altered the absence request form for employees, adding a selection of "FMLA Absence," when Plaintiff was complaining of being treated differently because of her sex.

31. Defendant again altered the absence request form when Plaintiff was

off of disability leave.

32. Defendant discriminated against Plaintiff by not granting Plaintiff the reasonable accommodation of working no more than eight hours in a 24-hour period, which Defendant gave to similarly situated male-coworkers.

33. Defendant has also accommodated Jim Bretz, a male employee who suffered an injury on duty, and gave him multiple accommodations including the accommodation of working 7:00 A.M. to 3:00 P.M., Monday through Friday, and working in positions and capacities.

34. In June 2021, Defendant launched a pretextual investigation into Plaintiff for coming into work with Covid-19.

35. Defendant never found no evidence of guilt on the part of Plaintiff.

36. Defendant never released the results of the investigation to Plaintiff.

37. Defendant had a pattern and practice of promptly releasing investigation results for similarly situated males, but never released Plaintiff's investigation results.

38. At all times relevant, Plaintiff was acting as an employee of Defendant.

39. On or about July 27, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for sex and disability discrimination.

40. On or about May 17, 2022, Plaintiff's Union and Defendant signed a Letter of Understanding that became effective on June 19, 2022.

41. The Letter of Understanding required regular 12-hour shifts for Communications employees, including Plaintiff.

42. On or about June 14, 2022, Plaintiff suffered an injury at work, which aggravated her chronic back pain, and which substantially impairs major life activities, including but not limited to, walking, standing, sitting, and lifting, and otherwise qualifies as a disability under the ADA.

43. On or about June 24, 2022, Plaintiff's doctor again prescribed her the reasonable accommodation of working no more than 8 hours in a 24-hour shift and provided this note to Defendant.

44. On or about June 27, Defendant explicitly denied Plaintiff's accommodation request and did not engage in the interactive process to find Plaintiff a disability.

45. On or about July 22, 2022, Plaintiff was constructively discharged.

46. A reasonable person could no longer work for Defendant as a result of Defendant's failure to accommodate her disability, engage in the interactive process to find her a reasonable accommodation, and because a reasonable person could not be expected to endure the severe and pervasive sex discrimination and harassment.

47. On or about August 2, 2022, the EEOC issued a Right to Sue letter, which Plaintiff received a few days later.

**COUNT I**
**DISCRIMINATION AND HARASSMENT BASED ON SEX IN VIOLATION OF TITLE VII AND ELCRA**

48. Plaintiff incorporates by reference paragraphs 1 through 47 of the Complaint as though fully set forth herein.

49. Pursuant to Title VII of Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.210, *et seq*. (ELCRA), Plaintiff is guaranteed the right to be free from discriminatory treatment from her employer and/or supervisors based upon her sex/gender.

50. Defendant was Plaintiff's employer within the meaning of Title VII and ELCRA.

51. Plaintiff belongs to a protected class as a female.

52. Plaintiff's sex was a factor in Defendant's decisions, actions, treatment, conduct and attitude towards Plaintiff.

53. Plaintiff was subjected to discriminatory treatment and unwelcome conduct including repeated and continuous harassment and adverse employment action due to her sex.

54. At all times relevant, Defendant created a hostile work environment for Plaintiff by allowing Plaintiff to be harassed and failing to take remedial action.

55. Defendant discriminated against Plaintiff by forcing her to use her FMLA time to fill overtime hours when it did not force Andrew Isola, a similarly situated male, to use his FMLA time to fill overtime hours.

56. Defendant owed Plaintiff a duty to refrain from discriminating against her, harassing her and treating her differently as a direct result of her sex.

57. Defendant breached and violated its duties owed to Plaintiff, by reason of the following acts and/or omissions:

a. Failing to screen and place in supervisory positions, persons who would be capable of being competent and law-abiding supervisors, and with particular reference to enforcing laws against discrimination in the workplace;

b. Giving supervisory authority to persons who were known to have propensities as would make them unfit to serve in the capacity of supervisor over employees;

c. Failing to properly educate and train its employees and supervisors, particularly with reference to the unlawfulness of discrimination in the workplace; and

d. Failing to properly warn or advise its employees and supervising personnel to refrain from discriminating against employees.

58. As a direct and proximate result of the actions of Defendant, Plaintiff was the subject of discriminatory conduct on the part of Defendant.

59. Defendants created an offensive and hostile work environment against Plaintiff as a direct result of Plaintiff's gender/sex by reason of the following acts and/or omissions:

a. Violating the laws against discrimination by engaging in gender/sex discrimination in the workplace;

b. Imposing discipline based on gender/sex;

c. Taking adverse employment action against Plaintiff based upon her gender/sex;

d. Creating a hostile work environment for Plaintiff by discriminating against her, harassing her, and retaliating against her due to her gender/sex;

e. Constructively discharging Plaintiff.

60. Because of the unlawful conduct of Defendant, its agents, representatives and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

61. Plaintiff is entitled to exemplary, compensatory and punitive damages pursuant to Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*., as a result of each and every violation of the act, including costs and reasonable attorney's fees.

WHEREFORE, Plaintiff respectfully requests judgment in her favor against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

**COUNT II**
**FAILURE TO ACCOMMODATE UNDER THE ADA AND THE PWDCRA**

62. Plaintiff incorporates by reference paragraphs 1 through 61 of the Complaint as though fully set forth herein.

63. Defendant is Plaintiff's employer within the meaning of the ADA and PWDCRA.

64. Plaintiff suffered from back and head injuries, disabilities under the ADA and PWDCRA, which Defendant regarded as disabilities, and which substantially interfered with major life activities.

65. Plaintiff requested and was denied the reasonable accommodation of an ergonomic chair.

66. Defendant did not engage in the interactive process or suggest a different reasonable accommodation for Plaintiff's disability.

67. On multiple occasions, Plaintiff requested and was denied the reasonable accommodation of working no more than eight hours in a 24-hour period.

68. Defendant and its agents, employees and representatives, breached and violated its duty to Plaintiff by reason of the following acts and/or omissions:

a. Violating the laws against discrimination by failing to provide Plaintiff with a reasonable accommodation for her disabilities.

b. Failing to properly educate and train its employees and supervisors, particularly with reference to the unlawfulness of discrimination in the workplace; and

c. Failing to properly warn or advise its employees and supervising personnel to refrain from discriminating against employees;

d. Constructively discharging Plaintiff.

69. As a direct and proximate result of the actions of Defendant, Plaintiff was the subject of discriminatory conduct on the part of Defendant, and its agents and employees.

70. Because of the unlawful conduct of Defendant, and its agents and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages including embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits.

71. Plaintiff is entitled to exemplary, compensatory and punitive damages pursuant to the ADA and PWDCRA as a result of each and every violation of the act, including costs and reasonable attorney's fees.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, plus punitive/exemplary damages, together with costs, interest, attorney fees and any other relief this Honorable Court deems appropriate.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800
sbatey@bateylaw.com

Dated: October 14, 2022

## DEMAND FOR JURY TRIAL

NOW COMES, Plaintiff, Annette Wesley, by and through her attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issues allowed by law.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/ Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800
sbatey@bateylaw.com

Dated: October 14, 2022